UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-cv-21434-LEIBOWITZ/AUGUSTIN-BIRCH

**LASHANDRA PARKER-NASHID,**

    *Plaintiff,*

v.

**MIAMI-DADE COUNTY**,

    *Defendant.*

_____/

THIS CAUSE comes before the Court on Defendant's Motion for Summary Judgment (the "Motion") [ECF No. 50], filed on April 15, 2024. Plaintiff filed a Response to Defendant's Motion on May 16, 2024 [ECF No. 60], and Defendant filed a Reply on May 29, 2024 [ECF No. 65]. This Court held a hearing on the Motion on July 10, 2024. [ECF No. 69]. Being fully advised and for the reasons that follow, the Motion [**ECF No. 50**] is **GRANTED in part** and **DENIED in part**.

I.    **Factual Background**

Lashandra Parker-Nashid ("Parker-Nashid" or "Plaintiff") was hired as a part-time bus operator by Miami-Dade County on December 22, 2014. [Joint Stipulation of Agreed Material Facts, ECF No. 68 ¶ 3]. In 2016, Parker-Nashid became a full-time bus operator. [*Id.*]. She is married to Talib Nashid, a former employee of the Miami-Dade County Department of Transportation and Public Works ("MDT"). [*Id.* ¶ 4]. Talib Nashid filed a lawsuit against Miami-Dade County in 2016, alleging anti-Muslim bias, which was settled by Miami-Dade County. [Defendant's Statement of Material Facts, ECF No. 40 ¶ 6; Aff. of Lashandra Parker-Nashid, ECF No. 60-2 ¶ 7; Aff. of Talib Nashid, ECF No. 60-3 ¶¶ 2, 5].

Parker-Nashid's "chain of command in ascending order consisted of Bus Operations Supervisor Alex Araujo, Superintendent Orlando Aleman, Chief Eliza Achinah, Division Chief Wade Jones, and Assistant Director Derrick Gordon, who in turn, reported to Director [Alice] Bravo." [Joint Stipulation of Agreed Material Facts ¶ 8].

According to the Defendant, on April 16, 2019, Plaintiff was late to work and went to the bathroom after she secured the bus she was set to drive. [Defendant's Statement of Material Facts ¶ 12]. While Parker-Nashid was gone, Supervisor Araujo noticed there was an elderly woman with children waiting in the heat to board the bus. [Id. ¶ 13]. Araujo opened the door and allowed the elderly woman and other riders to board the bus. [Id. ¶ 14]. Parker-Nashid returned and told Araujo that he was not supposed to touch the bus; Araujo responded that, as a supervisor, he was allowed to do what would help her and the public. [Id. ¶¶ 15–16]. Parker-Nashid then purportedly "scream[ed]" at Araujo to tell him he was wrong; because of this, Araujo drafted an incident report. [Id. ¶¶ 17–18].

Parker-Nashid disputes Defendant's descriptions of the April 16, 2019, incident and claims she had been struggling with the wheelchair release mechanism on the bus and left to call Bus Traffic Control for help. [Aff. of Lashandra Parker-Nashid ¶ 33]. Araujo allegedly watched Plaintiff struggle for five minutes and offered Parker-Nashid no assistance. [Id. ¶¶ 32-33]. Plaintiff claims she never left to go to the bathroom or left a customer in the heat without assistance. [Id. ¶ 35].

On April 29, 2019, Plaintiff was called into Superintendent Aleman's office to discuss the April 16, 2019, incident. [Joint Stipulation of Agreed Material Facts ¶ 10]. Defendant alleges that Aleman told Plaintiff that supervisors have open authority to allow passengers to board busses and that any issue Plaintiff had with her supervisor should be brought to management's

attention out of the earshot of passengers.  [Defendant's Statement of Material Facts ¶¶ 20–21]. Plaintiff then went to get her Union Shop Steward.  [*Id.* ¶¶ 22–23].  When Parker-Nashid returned, Aleman told her that he was concerned with her behavior.  [*Id.* ¶ 25].  Parker-Nashid began yelling that the supervisor "cannot open her bus," that all management is the same, and that management was out to get her, according to the Defendant.  [*Id.* ¶ 26].

Parker-Nashid claims that on May 7, 2019, she was summoned into Chief Achinah's office, where two armed guards were present, to receive a "Disciplinary Action Report [("DAR")] and [an] Employee Assistance Program highlighting mental health assistance[,]" and was relieved of duty.  [Joint Stipulation of Agreed Material Facts ¶¶ 11-12; Aff. of Lashandra Parker-Nashid ¶ 45].  Later, on May 23, 2019, Aleman submitted the DAR to Director Bravo recommending that Parker-Nashid be terminated for violating the County's Personnel Rules Chapter VIII, Section 7.[1]  [ECF No. 40-5].

Parker-Nashid met with Director Bravo on June 10, 2019, to discuss the April 29, 2019, incident and the DAR.  [Joint Stipulation of Agreed Material Facts ¶ 13].  Parker-Nashid attended this meeting, which lasted thirty-five (35) minutes to an hour, with her union representative to tell "her side of the story."  [Defendant's Statement of Material Facts ¶¶ 36–38]. Parker-Nashid claims that Bravo "had her mind made up" before this meeting and afforded her no meaningful opportunity to present her side of the story.  [Aff. of Lashandra Parker-Nashid ¶ 45; Aff. of Talib Nashid ¶¶ 7, 8].

---

[1] The DAR stated that Parker-Nashid violated the following sections of the County Personnel Rules:

> B) That the employee has been offensive in his conduct toward his fellow employees . . .
> I) That the employee has been guilty of conduct unbecoming of a County Employee …
> L) That the employee has violated the provisions of department[al] rules . . .

[ECF No. 40-5 at 1].

Bravo then terminated Parker-Nashid on November 15, 2019, which she appealed to a civil service board. [*Id.* ¶¶ 15–16; ECF No. 40-13]. An arbitrator was selected by the American Arbitration Association and held a hearing on January 23, 2020. [ECF No. 40-13 at 1]. The arbitrator issued a recommendation to Mayor Carlos Giminez to sustain Bravo's decision to terminate Parker-Nashid, and Mayor Giminez upheld the decision. [Joint Stipulation of Agreed Material Facts ¶¶ 17–20].

Separate from this incident, Parker-Nashid claims that (1) she has been "harassed continuously and questioned about [her] hijab and given bad looks and constantly harassed because [she is] a Muslim woman[,]" [Dep. of Lashandra Parker-Nashid, ECF No. 40-4 at 24:10–16]; (2) her termination was, in part, due to her husband's prior lawsuit against the County for discrimination, [*id.* at 33:17–22]; (3) Joel Perez, an MDT manager, directed someone to question Plaintiff about her hijab, [*id.* at 48:8–10]; (4) someone else from management asked about her hijab, referring to it as the "thing on [her] head[,]" [*id.* at 51:10–20]; and (5) she continuously complained about her mistreatment on the basis of her religion, [Aff. of Lashandra Parker-Nashid ¶ 21].

## II.    Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Those materials may include, "depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

If the moving party meets its burden, the non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If, in response, the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. A dispute of fact is "genuine" if, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In determining whether genuine issues of material fact exist, [the reviewing court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Rice-Lamar*, 232 F.3d at 840 (citing *Anderson*, 477 U.S. at 255). However, when the record "taken as a whole" could not support a reasonable finding for the non-movant, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**III.     Title VII Retaliation – Count I**

Title VII prevents employers from retaliating against any employee "because [s]he has opposed any practice made an unlawful employment practice[.]" 42 U.S.C. § 2000e-3(a). "To

establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) [s]he engaged in statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there is some causal relation between the two events." *McMillian v. Postmaster Gen., U.S. Postal Serv.*, 634 F. App'x 274, 277 (11th Cir. 2015).  Statutorily protected expression includes an employee's opposition to "any practice" made unlawful by Title VII.  *Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1335 (S.D. Fla. 2012) (citing *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1174 (11th Cir. 2000)).[2]

Parker-Nashid identified a few possible evidentiary sources of her statutorily protected expression.  [*See* Summary Judgment H'g Tr., Jul. 10, 2024, at 44:3–45:24].  She points to three statements in her Sworn Affidavit: (1) "I repeatedly complained at all levels about the County's anti-Muslim discrimination of me, resulting in not only my termination but the County's retaliation against me[;]" (2) "I've continuously complained about this prohibited practice as violating my Civil Rights up to the date of my termination[;]" and (3) "The Superintendents and managers never acknowledged my complaints and ultimately proceeded with disciplinary action without the proper due process."  [Aff. of Lashandra Parker-Nashid ¶¶ 9, 21, 25].  Beyond these statements, and similar statements in Parker-Nashid's deposition, there is no evidence of specific or detailed instances in which she complained about anti-Muslim animus in her workplace.

---

[2] Plaintiff cites *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) for the proposition that to establish a statutorily protected expression, a plaintiff must only show that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices."  However, a good faith belief is "[i]n addition" to "formal" or "informal" complaints.  *Id*. (citing *Rollins v. Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989)).  Plaintiff is unable to show that she made those "formal" or "informal" complaints.

While general complaints of discrimination can suffice to establish the first prong, these complaints must be described with at least some particularity.³ *Cf. Ahern v. Delta Air Lines, Inc.*, 609 F. Supp. 3d 1314, 1335 (S.D. Fla. 2022) (finding the first prong was established where it was undisputed that the plaintiff made general complaints *to particular persons on specific dates* about discrimination *by a specific person*). Parker-Nashid's sworn statements are vague and plainly conclusory – there is no identification of a specific instance where she complained of discrimination, there are no facts about what she complained of, there is no evidence of the dates on which she complained, and there is no evidence about to whom she complained. Thus, Parker-Nashid's generalized statements of purported complaints cannot possibly establish that she engaged in statutorily protected expression.

Even if Parker-Nashid's conclusory and non-specific allegations that she complained about anti-Muslim discrimination in her workplace were sufficient to be considered statutorily protected expression, she offers no evidence that there was *any* causal connection between her complaints and her termination. "To establish the causal connection required by the third prong, the plaintiff must show that: (a) the decision-makers were aware of the protected conduct; and (b) the protected activity and the adverse employment action were not wholly unrelated." *Baker v. Russell Corp.*, 372 F. App'x 917, 919 (11th Cir. 2010) (cleaned up); *Shedrick v. Dist. Bd. of Trustees of Miami-Dade Coll.*, 941 F. Supp. 2d 1348, 1367 (S.D. Fla. 2013). Parker-Nashid has shown no evidence that Director Bravo, the ultimate decisionmaker on Parker-Nashid's termination, was aware of any prior complaints Plaintiff made. Plaintiff offers nothing beyond

---

³ Parker-Nashid is unable to support sufficiently this essential element of retaliation by citing, with specificity, to the record to describe the instances of Plaintiff's complaints. Such a failure shows that Plaintiff cannot establish beyond a mere scintilla of evidence that she complained of anti-Muslim discrimination and thus requires this Court, on Summary Judgment, to grant the Defendant's Motion. *See Anderson*, 477 U.S. at 252; *Rice-Lamar*, 232 F.3d at 840.

7

conclusory allegations to show the complaints and her termination were at all related. On this record, Plaintiff cannot establish even some causal connection between her purported complaints and her termination.

Nor does Talib Nashid's lawsuit alleging anti-Muslim discrimination in the MDT establish Parker-Nashid's statutorily protected expression. While a Title VII retaliation claim *can* succeed based on the actions of an employee's spouse, there is almost no evidence beyond conclusory statements that the lawsuit played any role in Director Bravo's decision to terminate Parker-Nashid. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011). Beyond this lack of evidence, the long temporal proximity between the lawsuit and Plaintiff's termination weighs strongly against a finding that the two are connected. At least two years passed between the lawsuit and Parker-Nashid's termination – and such a long amount of time clearly fails to establish causation on its own. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (finding that a "three to four month disparity" between the protected expression and the adverse employment action is insufficient because "mere temporal proximity, without more, must be 'very close.'"); *Diaz v. Miami Dade Cnty.*, No. 09-21856-CIV, 2010 WL 3927751, at *8 (S.D. Fla. Aug. 17, 2010) (finding that the plaintiff could not establish a causal connection between his wife's protected activity and his adverse employment action because his wife's protected activity was "more than one year before" the adverse action). Thus, even assuming Talib Nashid's lawsuit can constitute Parker-Nashid's statutorily protected activity, there is no evidence that it caused Director Bravo to terminate her.

Because Defendant succeeds in showing that the evidence presented to this Court is insufficient to make out a *prima facie* case of Title VII retaliation, Summary Judgment is GRANTED in favor of the Defendant on this Count.

## IV. Title VII Discrimination – Count II

Employers may not hire, discharge, or otherwise discriminate "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a). "A plaintiff may prove a claim of intentional discrimination under Title VII through direct evidence, through circumstantial evidence, or through statistical proof." *Shedrick*, 941 F. Supp. 2d at 1366 (citing *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008)). Plaintiff has not attempted to prove discrimination here through statistical proof; therefore, this Court will only analyze whether the Plaintiff has shown discrimination through direct or circumstantial evidence.

### A. There is no "direct evidence of discrimination" as a matter of law.

Direct evidence is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Shedrick*, 941 F. Supp. 2d at 1366 (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)).

> [D]irect evidence must link an employer's attitude to the actual discriminatory or retaliatory act complained of by the employee. It must be evidence, that, if believed, proves the existence of a fact without inference or presumption. **Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination.** If the evidence merely suggests, but does not prove, a discriminatory motive, then it is indirect, circumstantial evidence.

*Id*. (emphasis added). Direct evidence is an extremely high bar to meet and must show, unambiguously, that someone faced an adverse employment action because of their protected status. *See Mohamed v. Pub. Health Tr. of Miami-Dade Cnty.*, No. 09-cv-21235, 2010 WL 2844616, at *7 (S.D. Fla. July 19, 2010) (finding no direct evidence of discrimination where an employer said "This is a Christian country. If I give you time off to go to the mosque, I have to give everybody time off to go to church. We don't kill people here. Your religion is your

9

problem."). Where there is direct evidence of discrimination, the plaintiff establishes a discrimination claim and the *McDonnell Douglas* test is inapplicable. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 112 (1985).

Plaintiff identifies a few possible sources of direct evidence – mainly from her own deposition. [ECF No. 60 at 5–7]. Plaintiff's evidence of direct discrimination includes general statements that she was harassed continuously, questioned about her hijab, given bad looks, attacked by her supervisor, and saw a supervisor direct someone to question Plaintiff about her religion. [*See* Dep. of Lashandra Parker-Nashid, ECF No. 60-1 at 24:11–16, 39:3–10, 48:8–10, 49:2–22, 51:13–20]. Plaintiff only cites two specific statements by Supervisor Achinah in her effort to prove direct evidence of discrimination: (1) "[w]hat's that thing on your head[,]" in reference to Plaintiff's hijab; and (2) "do [you] walk four steps behind [your] husband . . . is [your husband] allowed to have more than one wife?" [*See* Summ. Judg. H'g Tr., Jul. 10, 2024, at 37:13–20].

Parker-Nashid's general allegations, the two specific statements from Supervisor Achinah, and the other evidence she has offered do not come close to establishing "direct evidence of discrimination" under the law. There is no evidence of a blatant statement made by anyone in MDT even implying that they intended to discriminate against Parker-Nashid based on her religion. *See Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002). While Supervisor Achinah's statements (as provided by Parker-Nashid) are uncouth and may be evidence of a culture of discrimination, they are not the kind of explicit and unequivocal evidence that establishes Plaintiff was fired because of direct religious discrimination as required by Eleventh Circuit precedent. *See, e.g., Wilson*, 376 F.3d at 1086. It is also noteworthy on this point that

10

there is no allegation that Director Bravo, the ultimate decisionmaker who terminated Parker-Nashid, engaged in any sort of direct discrimination.

Thus, Summary Judgment is GRANTED in favor of the Defendant that the Plaintiff, as a matter of law, *cannot* establish direct evidence of discrimination.

### B. The Defendant cannot definitively establish that there is no circumstantial evidence of discrimination.

On the other hand, an employer's discriminatory intent can also be shown with "circumstantial evidence through either the *McDonnell Douglas* burden-shifting framework or by producing enough circumstantial evidence to raise a reasonable inference of, and thus triable issue of, intentional discrimination." *Shedrick*, 941 F. Supp. 2d at 1366 (citing *Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316, 1320 (11th Cir. 2012)). Under *McDonnell Douglas*:

> [T]he plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated "similarly situated" employees outside her class more favorably.
>
> If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.
>
> Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination.

*Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (citations and internal quotation marks omitted).

1. *Prima Facie* Case of Discrimination

Parker-Nashid has met her burden on the first three elements of the *prima facie* case of discrimination to survive summary judgment. As Defendant conceded at the Summary Judgment hearing, Parker-Nashid is a member of a protected class as a Muslim, and she was subjected to an adverse employment action via her termination.[4] [*See* Summary Judgment H'g Tr., Jul. 10, 2024, at 14:11–19]. Defendant also makes no argument that Parker-Nashid was unqualified to be a bus driver and conceded that the entire dispute over the *prima facie* case came down to whether she was treated less favorably than similarly situated individuals outside her protected class. [*Id.* at 14:20–24].

Comparators need not be "similar in all but the protected ways. A plaintiff needn't prove, therefore, that she and her comparators are identical save for their race or gender, as the case may be. . . . Nor is it necessary for a plaintiff to prove purely formal similarities—e.g., that she and her comparators had precisely the same title." *Lewis*, 918 F.3d at 1227 (cleaned up) (holding that comparators need to be similarly situated in all "material respects."). Ordinarily, a similarly situated comparator will have "engaged in the same basic conduct as the plaintiff[,] . . . been subject to the same employment policy[,] . . . been under the jurisdiction of the same supervisor as the plaintiff[,] . . . [and] share[d] the plaintiff's employment or disciplinary history[.]" *Id.* at 1227–28 (citations omitted).

Parker-Nashid identifies five individuals who could be considered similarly situated to her: Allen Coil, Fred Akins, Jeffrey Mitchell, Brian Davis, and Supervisor Dallas. [Dep. of

---

[4] Parker-Nashid's termination is unquestionably an adverse employment action for purposes of the Title VII *prima facie* case of discrimination. *See Mohamed v. Pub. Health Tr. of Miami-Dade Cnty.*, No. 09-cv-21235, 2010 WL 2844616, at *8 (S.D. Fla. July 19, 2010) (describing an "adverse employment action" as a "serious and material change in the terms, conditions, or privileges of employment" as viewed by a "reasonable person in the circumstances" and includes termination).

12

Lashandra Parker-Nashid at 34:6–37:1]. While the details of these individuals and what they are accused of having done are scarce, this Court has gleaned the following information from the evidentiary record:  (1) Allen Coil is a transit operator at MDT who Parker-Nashid claims used "abusive language" and yet was not fired.  [*Id*. at 34:24–35:2, 41:8–16].  (2) Fred Akins, Jeffrey Mitchell, Brian Davis, and Supervisor Dallas are MDT employees, and Mitchell is the union president.  [*Id*. at 35:20-25; ECF No. 65 at 5].  (3) Parker-Nashid claimed that Akins "slapp[ed]" and "chok[ed]" someone, Brian Davis "beat up a passenger[,]" and Dallas "got into a physical fight" with another supervisor.  [Dep. of Lashandra Parker-Nashid at 36:1–16, 41:8–16].  (4) Despite these allegations, Parker-Nashid stated that none of the identified employees were terminated.  [*Id*. at 36:17–37:1].

The Defendant's reliance on *Naraine v. City of Hollywood*, for the proposition that the employees Parker-Nashid identified are not "similarly situated" as a matter of law because they did not engage in the same "basic conduct" as Plaintiff, misses the mark.  [ECF No. 50 at 9-10 (citing *Naraine v. City of Hollywood*, No. 21-cv-60313-RAR, 2022 WL 3577069, at *9 (S.D. Fla. Aug. 19, 2022), *aff'd*, No. 22-13171, 2023 WL 6475507 (11th Cir. Oct. 5, 2023)].  Parker-Nashid was terminated for violating the County's Personnel Rules, Chapter III, Section 7, which states that an employee cannot be "offensive" in her conduct toward fellow employees or be "guilty of conduct unbecoming of a County employee[.]"  [ECF No. 50 at 5–6].  However, Plaintiff has identified numerous other employees whose actions, as described by Plaintiff and if credited by the factfinder, could be found to violate these same rules, which distinguishes *Naraine*.  Plaintiff claims that other employees "hit" someone, "slapp[ed]" and "chok[ed]" someone and used "abusive language[.]"  [ECF No. 60 at 10].  All of these actions could be "offensive" to another employee or "unbecoming" of an employee, and therefore the individuals identified would have

13

engaged in the same "basic conduct" – violating the personnel rules – over which Parker-Nashid was terminated and the comparators were not.

Importantly, Parker-Nashid claimed only that these potential comparators' actions occurred while she was employed by the County, and she did not specify the exact date of their punishable actions. [Summ. Judg. H'g Tr., Jul. 10, 2024, at 50:10–51:19]. If, at trial, the evidence shows that the actions taken by the other possible comparators occurred long before or after the Plaintiff's actions, this Court may direct a jury that the lack of temporal proximity cuts against a finding that the comparators were similarly situated. *See, e.g., Lewis*, 918 F.3d at 1230 (finding individuals were not similarly situated where they were placed on leave "years apart and pursuant to altogether different personnel policies and . . . for altogether different conditions.").

To underscore the point, this Court does *not* hold that the individuals identified by Parker-Nashid are appropriate comparators as a matter of law. On this Motion, Parker-Nashid's deposition is the only evidence submitted to this Court that posits there may be possible comparators. This evidence, however, is sufficient *at this summary judgment stage* to create a genuine issue of material fact for a jury to determine whether these individuals are comparators. Plaintiff's identification of possible comparators and her descriptions of their actions which, if true, could violate the same personnel rules which she violated, create an issue for trial – whether these individuals and their actions establish that they are proper comparators to establish a *prima facie* case. Therefore, Summary Judgment cannot be granted in favor of the Defendant on this prong.

2. Legitimate Reason for Termination and Pretext

If Parker-Nashid can prove her *prima facie* case of discrimination, the burden then shifts to Miami-Dade County to articulate a legitimate, nondiscriminatory reason for terminating

Parker-Nashid. While it is certainly true that an employer may terminate an employee for a "good or bad reason without violating" Title VII, this Court has not been presented with sufficient evidence to decide as a matter of law that Defendant's proffered reason for terminating Parker-Nashid was "legitimate." *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Parker-Nashid allegedly "scream[ed]" at her supervisor that he could not touch her bus, disagreed with her supervisor about their authority "in a loud voice," yelled that management was "all the same," "slammed her hand on" her supervisor's desk, and finally "pointed her finger at [her supervisor's] head and banged on his desk in a threatening manner." [ECF No. 50 at 5-6]. Defendant has claimed these actions constituted "intimidating and threatening conduct toward her supervisor," and thus violated the County's personnel rules. [*Id*. at 6].

On this record, this Court is unable to decide whether the Defendant's proffered reason was "legitimate" as a matter of law in part because the underlying personnel rules lack definition. The DAR states that Parker-Nashid exhibited conduct "unbecoming of a county employee[,]" was "offensive" in her conduct, and "violated the provisions of the departmental rules." [ECF No. 40-5 at 2]. However, the personnel rules, as presented to this Court, do not define when an employee is "unbecoming" or when an employee is "offensive." The Defendant's exhibits present this Court with no standards by which to judge whether Parker-Nashid's purported yells, screams, finger-pointing, and banging on a desk are "unbecoming," "offensive," or violate "the provisions of departmental rules," whatever those may be. Yelling at a supervisor may very well be a "legitimate" reason to fire an employee, but the Court cannot decide, based on the evidence presented to it at this stage, whether the Defendant's citation to such personnel rules by itself justifies its termination of Parker-Nashid a legitimate reason for termination as a matter of law.

15

A complete evidentiary record presented at trial on this point, of course, may warrant the Court to direct the jury otherwise.

If the Defendant is successful in establishing its legitimate reason for Parker-Nashid's termination, the burden then shifts for the final time to the Plaintiff to show that this legitimate reason is a pretext.  *Lewis*, 918 F.3d at 1221.  Similarly, the Court is unable to make a determination of pretext as a matter of law on this record.  Whether Parker-Nashid sufficiently proves that Defendant's reason for her termination is pretextual is a question for the jury; especially highlighted by the summary judgment record submitted here, this obligation "merges with the [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination."  *Lewis*, 918 F.3d at 1220–21 (citations omitted).

The Defendant argues that Director Bravo's "independent investigation" into Parker-Nashid's actions forecloses any liability on behalf of Miami-Dade County because "when a decision to discharge an employee is subject to independent review, the reviewer's judgment upholding the discharge cuts off any causal relationship between the alleged bias from another lower level employee." [ECF No. 50 at 11].  When a decisionmaker independently investigates a complaint and does not merely follow a biased recommendation of a supervisor to terminate an employee, a plaintiff cannot establish causation between her termination and the alleged discriminatory animus.  *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (finding that plaintiff introduced no evidence that defendant's alleged discriminatory animus influenced decision by independent board to terminate the plaintiff after conducting three-day hearing).[5]  Defendant argues that Director Bravo's independent review cleanses any potential

---

[5] The Defendant relied heavily on *Wellons v. Miami-Dade Cnty.*, No. 13-cv-20574, 2014 WL 2047779, at *14 (S.D. Fla. Feb. 25, 2014), *aff'd*, 611 F. App'x 535 (11th Cir. 2015) in support of its position here.  In *Wellons*, the Court found that the Director of the Miami-Dade Transit

bias of her subordinates.  However, Defendant's conclusory statement that Bravo engaged in an "independent review" is, at a minimum, a disputed factual matter based on the record before the Court on this Motion.

The only source of the purported "independent investigation" that Defendant identifies is a June 10, 2019, meeting between Parker-Nashid, Bravo, and Parker-Nashid's union representative.  [ECF No. 40 ¶¶ 35–36].  This meeting lasted "35 minutes to an hour," and Parker-Nashid had the opportunity to tell her "side of the story."  [*Id*. ¶¶ 37, 39].  Based on this meeting and after "reviewing all of the relevant information concerning the April 29, 2019, incident[,]" Bravo terminated Parker-Nashid.  [*Id*. ¶ 40].  This meeting is the only basis for the Defendant's claim that Bravo conducted an "independent investigation;" yet, without more evidence, it is insufficient to establish that Bravo conducted an "independent investigation" that breaks the causation chain for purposes of Title VII discrimination as a matter of law.

Additionally, Parker-Nashid offers *some* evidence that Director Bravo's decision was tainted by preconceptions of Parker-Nashid even before the June 10, 2019, meeting.  [*See* Aff. of Lashandra Parker-Nashid ¶ 45 ("Director Bravo made it clear that she knew my husband, was aware of his complaint about anti-Muslim bias and that she had her mind made up before I entered her office . . . . she even said that she knew exactly who my husband was and was not

---

Agency's review of a DAR and meetings with the plaintiff, the plaintiff's written rebuttal to the charges, and a meeting with the union president and the author of a fact-finding report on the subject, established an independent investigation that cleansed any potential taint of a supervisor.  *Id*. at *14 (finding Director was not a "cat's paw" of supervisor because Director did not rubber-stamp the biased recommendation without an independent investigation).  However, the Court, at this point, cannot say *as a matter of law* that based on a meeting that lasted no more than one hour and Bravo's "review[] of the relevant information" that Bravo conducted an "independent investigation" that purges any possible taint of prior discrimination.  In short, the evidentiary record submitted here does not clearly show that Bravo's review is so similar to independent reviews such as the one in *Wellons* that it creates a break in the chain of causation as a matter of law.  Perhaps at trial the record will permit such an inference.

surprised that I had followed his behavior, which I took to mean his fight against anti Muslim discrimination."); Aff. of Talib Nashid ¶¶ 7, 8 ("Ms. Bravo mentioned that she remembered my comments and was not surprised my wife was doing the same thing . . . . Ms. Bravo engaged in no review of the facts and gave my wife no meaningful opportunity to present her side of the story.")].

As to the civil service board's hearing into Parker-Nashid's termination and Mayor Giminez's decision to uphold the termination, Defendant at the Motion Hearing was unable to cite *any* case in which an appellate hearing of a discriminatory termination would cleanse the taint of any initial discrimination. [Summ. Judg. H'g Tr., Jul. 10, 2024, at 20:9–21:3].

Therefore, the Defendant's Motion for Summary Judgment is DENIED as to whether circumstantial evidence of discrimination exists under the *McDonnell Douglas* framework. It is for a jury to decide (1) whether Miami-Dade County treated similarly situated employees outside of Parker-Nashid's class more favorably or not; (2) whether Defendant's nondiscriminatory reason(s) for its actions was/were legitimate; and (3) whether Defendant's proffered reason(s) was/were pretextual.

### V. Conclusion

It is hereby **ORDERED AND ADJUDGED** that, for the reasons stated above, the Motion [**ECF No. 50**] is **GRANTED in part** and **DENIED in part.** Plaintiff is unable to establish a claim of Title VII Retaliation, or a claim of Title VII Discrimination based on direct evidence. However, Defendant has not shown that Plaintiff cannot prove Title VII Discrimination based on circumstantial evidence at a trial. Count One is dismissed; Count Two shall proceed to trial consistent with this Opinion and Order.

**DONE AND ORDERED** in the Southern District of Florida on August 27, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record